UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAUL ALLEN ADAMS,

            Plaintiff,

v.                                         Case No. 18-cv-1557-pp

DR. LARSON, HSU MANAGER WHITMAN,
WARDEN HEPP, DR. STELIGA, FRANK,
DR. SPRINGS, TIDJUIST, DR. LIU,
HENTZ, HULSTEIN, MAASSEN, and
MS. HUBER,

            Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

The plaintiff filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. He also filed a motion for leave to proceed without prepaying the filing fee under 28 U.S.C. §1915. Dkt. No. 2. This decision resolves the plaintiff's motion and screens his complaint; it also addresses several letters from the plaintiff.

I.    <u>Motion for Leave to Proceed without Prepaying the Filing Fee</u>

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA authorizes courts to allow incarcerated plaintiffs to proceed with their cases without prepaying the case filing fee, if they meet certain conditions. One of those conditions is that they pay an initial partial filing fee. 28 U.S.C. §1915(b).

1

On October 4, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $7.90. Dkt. No. 4. The court received that fee about a week later. The court will grant the plaintiff's motion to proceed without prepayment of the filing fee and will require him to pay the remainder of the $350 filing fee over time in the manner explained at the end of this order.

II.  Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal

construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### A. The Plaintiff's Allegations

The plaintiff alleges that, since 2015, he has been experiencing pain in his right knee. Dkt. No. 1 at 2. The pain wakes him up at night and prevents him from engaging in daily activities such as exercising and walking. Id. The plaintiff explains that at the time he first complained about his knee pain, he was being treated for Hepatitis C. Id. According to the plaintiff, nurse practitioner Frank told him that, under Department of Corrections policy, he could be treated for only one condition at a time, so he would have to deal with his chronic knee pain until his Hepatitis C treatment was complete. Id. The plaintiff filed an inmate complaint alleging that the Health Services Unit manager refused to provide him with the appropriate pain management "she" offered him (it is not clear who "she" is). Id. Frank allegedly told the plaintiff to ask HSU manager Whitman about pain management. Id.

The plaintiff alleges that after failing his second Hepatitis C treatment, he talked to Frank, Whitman and Dr. Larson numerous times about his knee pain and how it was waking him up at night and keeping him from exercising and other daily activities. Id. He told them he was sleep deprived, in a lot of pain and at his breaking point. Id. The plaintiff states that they refused to treat him or give him pain medication. Id.

At the end of 2016, defendant Frank ordered an x-ray of the plaintiff's right knee. Id. at 3. Frank allegedly told the plaintiff that it showed the plaintiff had a "knee nod[ule]." Id. According to the plaintiff, Frank offered cortisone shots on different occasions, but no pain medication. Id. He says that this meant that he got, at best, three to four hours of sleep a night. Id. The plaintiff

3

asserts that he wrote to Whitman and warden Hepp that he needed pain medication because he was waking up about three times per night and could not participate in daily activities. Id. The plaintiff asserts that for the next two years, he wrote to Whitman and Hepp, "begging for help." Id.

The plaintiff explains that in 2017, Frank sent him to physical therapy at the HSU (where he also underwent iontophoresis, the use of electrical stimulation to administer medication through the skin), but the pain did not improve—it seemed to get worse. Id. Frank eventually received approval to send the plaintiff to an off-site consultation with an orthopedist and to get an MRI of the plaintiff's knee. Id. The plaintiff states that Dr. Larson canceled the appointment, saying, "We lost our only surgeon; it's gonna be hard to find another one to replace him." Id. The plaintiff asked for pain medication. Id. Dr. Larson allegedly gave him some but warned him of the serious risks, including internal bleeding and death, given his stomach condition; he told the plaintiff "the choice is yours." Id.

The plaintiff alleges that Dr. Larson referred him to Dr. Steliga, who the plaintiff states works for the DOC, although he doesn't clarify in what capacity. Id. Dr. Steliga allegedly noted the treatment and tests the plaintiff already had received. Id. at 4. He also examined the bump on the plaintiff's knee, referring to it as a nodule. Id. He allegedly pushed on it, causing the plaintiff extreme pain. Id. The plaintiff explains that Dr. Steliga ordered a second set of x-rays and an ultrasound so he "could see what he was doing when he cut into [his] knee." Id. The plaintiff says that he told Steliga that an x-ray would not show, in detail, what Steliga needed to know; the plaintiff says it already had been tried, "unsuccessfully." Id. Steliga nonetheless ordered an x-ray and an ultrasound. The plaintiff says that when he went for the ultrasound, the

4

woman who was supposed to perform the ultrasound allegedly refused to do so saying, "this isn't going to show anything unless you have a huge mass on your knee!" Id.

At the next appointment, Dr. Steliga allegedly questioned why Dr. Larson had cancelled the ortho consult, and he ordered an ortho consult and an MRI. Id. The plaintiff asserts that Steliga prescribed Benadryl for his knee pain and to help him sleep. Id. Someone—the plaintiff does not say who—then scheduled him for another ortho consult at UW Waupun. Id.

The doctor at UW Waupun ordered an x-ray of the plaintiff's knee, showed the plaintiff the film and allegedly asked him, "What is this knee nodule [you're] talking about?" Id. The plaintiff says that the doctor, looking at the film, told him there was no knee nodule, and that an x-ray wouldn't show anything. Id. The plaintiff asserts that none of the x-rays ever showed a "knee nodule," and that that Frank, Larson, Whitman and Steliga made up that term. Id. at 5. The plaintiff asserts that the UW Waupun doctor ordered an MRI, which allegedly showed that the plaintiff has a tumor on his knee. Id.

The plaintiff states that he was later seen by other specialists, including one in La Crosse and one in Madison. Id. The specialist in Madison allegedly diagnosed a tumor on the plaintiff's knee and told him a biopsy was needed. Id. The doctor told him that the tumor could be cancerous, but the chances were slim. Id. The plaintiff alleges that he continues to suffer from ongoing pain that disrupts his sleep and keeps him from daily activities. Id.

At some point during these events, the plaintiff was transferred to Chippewa Valley Correctional Treatment Facility, where he asked Dr. Springs and the HSU manager for pain medication. Id. According to the plaintiff, Dr. Springs continued his prescription for Tylenol and capsaicin cream even

5

though the plaintiff told him they were ineffective. Id. The plaintiff also was transferred to Jackson Correctional Institution, where he allegedly "begged" nurse practitioner Tidjuist, nurse Hentz, nurse Helstein, Dr. Liu and HSU manager Maassen for effective pain relief. Id. According to the plaintiff, they continued with the ineffective Tylenol and capsaicin cream. Id.

The plaintiff alleges that the doctor at UW Madison recommended the tumor be surgically removed, but that nurse Hulstein told him no surgery would be scheduled. Id. at 6. The plaintiff alleges that he wrote to Maassen, who ignores all his requests, and to Huber, who is in charge of scheduling outside appointments, but still no surgery has been scheduled. Id.

### B. The Court's Analysis

To state a claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment, a plaintiff must allege that (1) he suffered from an objectively serious medical condition, and (2) that the defendants were deliberately indifferent to that condition. Wilson v. Adams, 901 F.3d 816, 820 (7th Cir. 2018) (citations omitted). Officials are deliberately indifferent when they disregard known conditions that pose excessive risks to an inmate's health. Id. (citations omitted). "Allegations of refusal to provide an inmate with prescribed medication or to follow the advice of a specialist" may state a claim, as can delaying treatment for a non-life-threatening but painful condition. Arnett v. Webster, 658 F.3d 742, 753-54 (7th Cir. 2011) (citations omitted).

The court will allow the plaintiff to proceed against the defendants on deliberate indifference claims under the Eighth Amendment based on his allegations that they ignored his complaints of knee pain, delayed treating his knee pain, refused to follow the treatment recommendations of specialists, denied him pain medication, and/or refused to adjust his pain medication

6

when he informed them that what he was taking was ineffective. The court does not know whether the plaintiff will be able to prove these claims with evidence, but that is not the standard at screening. At this point, the plaintiff has alleged that he had a serious medical need (extreme pain in his knee), and that the defendants were deliberately indifferent to that need.

The court acknowledges that these defendants work at three different institutions; the court will allow the plaintiff to proceed against them in the same case because his claims arise out of the same circumstances (treatment for his knee condition) and because the court will have to address questions of law and fact that are common to all of them. See Fed. R. Civ. P. 20.

III. The Plaintiff's Letters

The court has received several letters from the plaintiff (often addressing issues in multiple cases). In a letter the court received on October 12, 2018, the plaintiff asked that this court handle all his cases. Dkt. No. 5. That is the court's policy—this judge is handling all his cases.

On October 24, 2018, the clerk's office received a letter (bearing multiple case numbers) asking the clerk to provide him copies of his complaints in three different cases. Dkt. No. 7. The clerk's office responded by notifying the plaintiff that he needed to pay for the copies he'd requested. Dkt. No. 7-1. (The clerk's office received that payment on November 5, 2018.) On December 3, 2018, the court received a letter from the plaintiff notifying the court that he has liver cancer and would be going to the infirmary at Dodge Correctional for chemotherapy. Dkt. No. 8. He expressed his belief that his cases should be expedited due to the "death nature of" his diagnosis, and said that he would not be able to defend himself while receiving treatment. Id. Finally, on December 26, 2018, the court clerk received a letter from the plaintiff,

7

explaining that he was at Dodge but that he did not have his legal files, and asking whether the court would advise Dodge to give him the files. Dkt. No. 9.

First, as the court advised the plaintiff in another order it issued today, the court advises the plaintiff that he must file separate motions for each of his cases. He can lump several requests about the *same case* in one motion, but he can't lump requests about *different cases* into the same motion.

Second, if the plaintiff wants the court to do something, he needs to file a motion, not a letter.

Third, if the plaintiff is not able to proceed with these cases right now due to his medical treatments, he can file a motion, asking the court to "stay" the cases until he is able to participate. The court will not expedite the cases. Sadly, it has many cases involving inmates who are sick (some fatally ill). The court tries to get to each case as expeditiously as possible. It will try to keep up with the plaintiff's cases as quickly as it can, taking into account the other cases the court has.

IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order will be electronically transmitted to the Wisconsin Department of Justice for service on defendants Larson, Whitman, Hepp, Steliga, Frank, Springs, Tidjuist, Liu, Hentz, Hulstein, Maassen and Huber. The court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $342.10 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. The court also advises the plaintiff that if he does not file documents or take other court-ordered actions by the deadlines the court sets, the court may dismiss his case for failure to pursue it. The parties must notify the Clerk of Court of any change of address. Failure to

do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 9th day of January, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**